CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 21 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| STEVEN W. GOODMAN, | ) | Civil Action No. 7:12cv00568 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| WILLIAM W. MUSE *et al.*, | ) | |
| | ) | By: Samuel G. Wilson |
| Defendants. | ) | United States District Judge |

In 1992, a jury in Fairfax County, Virginia, found Steven Wayne Goodman guilty of raping and forcibly sodomizing a twelve-year-old girl, and the state court sentenced Goodman to multiple life sentences. In 1994, the Virginia General Assembly abolished discretionary parole for offenses committed after January 1, 1995. In 1998, the Virginia Parole Board ("the Board") repealed rules it had promulgated governing parole and adopted a "policy manual" in their stead, which outlined fourteen factors the Board would consider in exercising its discretionary power over parole decisions. Last year, Goodman filed an amicus brief in Burnette v. Fahey,[1] in which a group of Virginia state prisoners argued in the Fourth Circuit Court of Appeals that the Board did not actually consider all fourteen factors, but, in practice, considered only "the serious nature and circumstances of the crime," effectively abolishing parole for those offenders. Goodman now brings a *pro se* action pursuant to 42 U.S.C. § 1983, with supplemental jurisdiction asserted under 28 U.S.C. § 1367, for declaratory and injunctive relief to *prevent* the Board from considering twelve of the fourteen factors and compel the Board to review Goodman's parole eligibility. Goodman claims that a provision of the Virginia Code adopted in 1984 (well before Goodman's offense and conviction), violates the ex post facto clauses of the United States and

---

[1] 687 F.3d 171 (4th Cir. 2012).

Virginia constitutions, and that the Board's reliance on twelve of the parole-consideration factors violates the ex post facto and due process clauses of the state and federal constitutions. Goodman brings the action on behalf of himself "and a class of all persons who are, or will be, eligible for parole for offenses committed prior to January 1, 1995, and who have ten or more years to serve on their sentence[s]," (Compl. 7, ECF No. 1-1), and he requests the appointment of counsel. The court denies Goodman's motions for appointment of counsel and class certification, finds that Goodman's complaint is frivolous and fails to state a claim, and dismisses his claims pursuant to 28 U.S.C. § 1915A.[2]

## I.

In 1992, a jury in Fairfax County, Virginia, found Goodman guilty of raping and forcibly sodomizing a twelve-year-old girl, in violation of Virginia Code §§ 18.2-61 and 18.2-67.1, and sentenced him to multiple life sentences. Pursuant to legislation enacted in 1994, the Virginia General Assembly abolished discretionary parole for offenses committed on or after January 1, 1995. The Court of Appeals for the Fourth Circuit recently summarized the statutory and administrative framework that remains in place for Virginia prisoners who, like Goodman, committed their offenses before January 1, 1995:

> The Virginia Code entrusts the administration of the discretionary parole system to the Board, and it vests the Board with broad discretion in carrying out

---

[2] Section 1915A of Title 28 states:
(a) Screening.— The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
(b) Grounds for Dismissal.— On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
  (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
  (2) seeks monetary relief from a defendant who is immune from such relief.
(c) Definition.— As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

> its responsibilities. Section 53.1-136 of the Code obligates the Board to
> "[a]dopt ... general rules governing the granting of parole and eligibility
> requirements, which shall be published and posted for public review." And this
> section further instructs that the Board "shall . . . [r]elease on parole" parole-
> eligible persons who "are found suitable for parole, according to those rules"
> adopted by the Board. But the Board may not release any person without first
> conducting a "thorough investigation . . . into the prisoner's history, physical and
> mental condition and character and his conduct, employment and attitude while in
> prison" and "determin[ing] that his release on parole will not be incompatible
> with the interests of society or of the prisoner."

Burnette v. Fahey, 687 F.3d 171, 175 (4th Cir. 2012) (alterations in original) (citations omitted).

According to a Virginia statute last amended in 1984, the Board must consider parole-eligible inmates annually, but the Board may defer subsequent reviews for up to three years, so long as the inmate has at least ten years remaining on his sentence:

> Unless there be reasonable cause for extension of the time within which to review
> and decide a case, the Board shall review and decide the case of each prisoner no
> later than that part of the calendar year in which he becomes eligible for parole,
> and at least annually thereafter, until he is released on parole or discharged,
> except that upon any such review the Board may schedule the next review as
> much as three years thereafter, provided there are ten years or more or life
> imprisonment remaining on the sentence in such case.

Va. Code § 53.1-154.[3] In 1998, the Board repealed rules governing parole that it had published in the Virginia Administrative Code. In place of these rules, the Board distributed a "Policy Manual" outlining fourteen factors that, according to the Board, guide its discretion in parole decisions. See Burnette, 687 F.3d at 176. Those fourteen factors are: (1) compatibility of release, (2) basis for release, (3) effect on institutional discipline, (4) sentence data, (5) present

---

[3] The Virginia General Assembly recently passed "An Act to amend and reenact § 53.1-136 of the Code of Virginia, relating to parole board; parole review and denial." See H.B. 2103 (Va. 2013). It amends § 53.1-136 to require the Board to
> [e]nsure that each person eligible for parole receives a timely and thorough review of his
> suitability for release on parole, including a review of any relevant post-sentencing information. If
> parole is denied, the basis for the denial of parole shall be in writing and shall give specific
> reasons for such denial to such inmate.
Both chambers of the General Assembly unanimously approved the measure, and it awaits the Governor's signature.

offense, (6) prior criminal record, (7) personal and social history, (8) institutional experience, (9) changes in motivation and behavior, (10) release plans, (11) community resources, (12) results in scientific data, (13) impressions gained when an interview is conducted, and (14) information from lawyers, family members, victims, and other persons. (See Compl. 5, ECF No. 1.)

Goodman is currently housed at the Buckingham Correctional Center in Dillwyn, Virginia. Because he was convicted in 1992, before the Virginia General Assembly abolished parole, he is parole eligible. Goodman alleges that the Board has previously deferred his parole consideration and denied him parole, but that he is "scheduled to be reviewed for parole by the Board in the second quarter of 2013." (Mot. 1, ECF No. 13-1.)

## II.

Goodman requests the appointment of counsel and seeks class certification on behalf of himself "and a class of all persons who are, or will be, eligible for parole for offenses committed prior to January 1, 1995, and who have ten or more years to serve on their sentence[s]." (Compl. 7, ECF No. 1-1.) "[A] § 1983 litigant has no right to appointed counsel . . . ." McMillian v. Wake Cnty. Sheriff's Dep't, 399 F. App'x 824, 829 (4th Cir. 2010) (citing Bowman v. White, 388 F.2d 756, 761 (4th Cir. 1968)). Nevertheless, a district court may appoint counsel when "a pro se litigant has a colorable claim but lacks the capacity to present it." Id. (quoting Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984)). The litigant in this case, however, is a frequent filer who has pursued his various claims to the highest appellate level, and has even filed an amicus brief in the Fourth Circuit Court of Appeals. See Burnette, 687 F.3d at 172 (noting "Steven Wayne Goodman, Amicus Supporting Appellant"). Here, he has coherently drafted his own complaint and ably presented the claims he wishes the court to consider. Under the circumstances, the court discerns no basis for appointing counsel. Cf. Goodman v. Smith, 58 F. App'x 36, 39 (4th Cir. 2003) (affirming this court's denial of Goodman's motion for appointed

4

counsel). And as an inmate proceeding *pro se*, Goodman may not represent his fellow inmates in a class action lawsuit. Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975); see also Gevara v. Bennett, 472 F. App'x 187 (4th Cir. 2012). Accordingly, the court denies Goodman's motions for appointment of counsel and class certification.

### III.

Goodman claims that "the deferral of parole consideration provision in Va. Code § 53.1-154 violates the . . . federal ex post facto clause by allowing [the Board] to arbitrarily and capriciously deny Goodman of his statutory right to be considered for parole annually."[4] (Compl. 7, ECF No. 1.) The Ex Post Facto Clause prohibits laws that impose "a punishment for an act which was not punishable at the time it was committed; or impose[] additional punishment to that then prescribed." Hill v. Jackson, 64 F.3d 163, 167 (4th Cir. 1995) (quoting Weaver v. Graham, 450 U.S. 24, 28 (1981)). As the Virginia General Assembly last amended § 53.1-154 in 1984, well before Goodman committed his offenses, Goodman is essentially arguing that an antecedent statute constitutes ex post facto punishment. Given that the law was in effect when Goodman committed his original offenses, there is no ex post facto violation. Cf. Warren v. Baskerville, 233 F.3d 204, 206–07 (4th Cir. 2000) (finding no ex post facto violation when a

---

[4] The court notes at the outset that Goodman's § 1983 claims are likely foreclosed by the two-year statute of limitations applicable to § 1983 actions. Section 1983 adopts the statute of limitations that the forum state uses for general personal injury cases. See Wallace v. Kato, 549 U.S. 384, 387 (2007). The Virginia statute of limitations applicable to § 1983 actions is two years. See Va.Code § 8.01–243(A); see also Howard v. Smith, 87 F. App'x 309, 310 (4th Cir. 2004) (applying § 8.01–243(A) to a § 1983 claim). Federal law, however, governs the question of when a cause of action accrues. See Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975) ("The time of accrual of a civil rights action is a question of federal law."). "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

Goodman signed his complaint on November 16, 2012. Assuming he mailed it that day, see Houston v. Lack, 487 U.S. 266, 276 (1988) (describing the prison mailbox rule), his claims must have accrued after November 16, 2010 for them to be timely. Because Goodman has been subject to the deferral-of-parole-consideration provision in Virginia Code § 53.1-154 since his conviction in 1992, and to the fourteen parole-consideration factors since the Board established them in 1998, his claim appears untimely.

5

Virginia code section imparting discretion on the Virginia Parole Board was in effect when the inmate-plaintiff committed his offenses). Accordingly, the court dismisses the claim.[5]

### IV.

Goodman claims the Board violated the constitutional prohibition on ex post facto laws by exceeding its authority under state law when it included in its 1998 policy manual twelve parole-consideration factors (out of fourteen total) that are not strictly "post-commitment [and] prison-related." Of course, the Ex Post Facto Clause of United States Constitution is not concerned with whether a state agency has exceeded the scope of its legislative grant of authority. Rather, it is concerned with laws that impose punishment for an act that was not punishable when it was committed, or laws that impose additional punishment to that imposed at the time of the offense. The court finds nothing here that even remotely establishes an ex post facto violation and dismisses the claim.

To state a claim for a violation of the Ex Post Facto Clause, "a plaintiff must plead facts showing the retroactive application of a new rule that 'by its own terms' or through 'practical implementation' creates a 'significant risk' of extending the period of incarceration to which he is subject." Burnette, 687 F.3d at 184 (quoting Garner v. Jones, 529 U.S. 244, 255 (2000)). In Burnette, a group of parole-eligible Virginia inmates alleged that, following their incarceration, the Board had effectively abolished parole by relying "primarily, if not exclusively, on the serious nature and circumstances of the crime when making parole determinations" and failing to give "fair or meaningful consideration to [the fourteen factors] in its Policy Manual." Id. at 176. The Court of Appeals found that the inmates had failed to plead a plausible ex post facto violation. Id. at 184. The court explained that the new policies and procedures, "[b]y their

---

[5] Goodman's ex post facto claims are also squarely foreclosed by Hill v. Jackson, in which the Fourth Circuit held that the Board's policy of deferring parole consideration pursuant to § 53.1-154 was not an ex post facto violation. See 64 F.3d at 169–70.

terms," did not impact the length of the inmates' prison sentences, nor were there any facts indicating that the Board's "implementation" of the policies and procedures effectively abolished parole. Id. at 184–85.

In this case, Goodman puts the Ex Post Facto Clause to essentially the same use as the Burnette inmates: he seeks to prevent the Board from considering the serious nature of his conviction for rape and forcible sodomy. Specifically, he argues that the Board is statutorily limited to considering "post-commitment, prison-related" factors, rather than considering "pre-commitment, crime-related" factors. (Compl. 4–5, ECF No. 1.) As in Burnette, however, the discretionary considerations that Goodman claims violate the Ex Post Facto Clause do not "by their terms" impact his period of imprisonment; they merely catalogue various factors to guide the Board in its discretionary parole decisions. And Goodman's complaint gives no indication that the Board has implemented the factors to effectively abolish parole. Rather, Goodman offers little more than his absolutely unfounded conclusion that the parole-consideration factors "allow the Parole Board to arbitrarily and capriciously deny parole for reasons that are beyond the lawful scope of their authority." (Compl. 6, ECF No. 1.) Even if this court were empowered to "'micromanage[]' state parole systems through the Ex Post Facto Clause," which it is not, Burnette, 687 F.3d at 185, Goodman's complaint does not state a claim for an ex post facto violation. Accordingly, the court dismisses the claim.

V.

Goodman also attempts to cast his ex post facto claim as a due process violation. He claims that "Parole Decision Factors [three through fourteen] violate Goodman's . . . federal due process rights because they allow the Parole Board to render [its] parole decision in a manner not authorized by state law." (Compl. 6, ECF No. 1.) Here again, the Due Process Clause of the United States Constitution is not concerned with whether a state agency has exceeded the scope

7

of its legislative grant of authority. Instead, it guarantees certain procedures before a person can be deprived of life, liberty, or property. Regardless, Goodman's complaint does not state a due process violation, and the court dismisses the claim.

States have no obligation to offer parole to their prisoners. Swarthout v. Cooke, 131 S. Ct. 859, 862 (2011). However, a protectable liberty interest in parole "may arise from . . . an expectation or interest created by state laws or policies." Burnette, 687 F.3d at 181 (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). Once a state has created a liberty interest in parole, "the Due Process Clause requires fair procedures for its vindication," and courts "will review the application of [these] constitutionally required procedures." Id. (alteration in original) (quoting Swarthout, 131 S. Ct. at 862). It is difficult, however, "to imagine a context more deserving of federal deference than state parole decisions." Id. (quoting Vann v. Angelone, 73 F.3d 519, 521 (4th Cir. 1996)). As a result, "in the parole context, 'the procedures required are minimal.'" Id. (quoting Swarthout, 131 S. Ct. at 862). "[A]t most, . . . parole authorities must 'furnish to the prisoner a statement of its reasons for denial of parole.'" Id. (second alteration in original) (quoting Vann, 73 F.3d at 522).

Here, Goodman has not alleged that the Board has not carried out the minimal procedures due process requires of it. He merely alleges that twelve of the parole-consideration factors violate due process because they are "pre-commitment, crime-related" factors, which allows the Board to make parole decisions "in a manner not authorized by state law." (Compl. 6, ECF No. 1.) Rather than belaboring the point that "[t]he nature and circumstances of the underlying offense is indisputably a legitimate factor that may be considered," Burnette, 687 F.3d at 187 (Gregory, J., dissenting), the court simply concludes that Goodman's rehashed allegations do

8

nothing to show that he has not received all the process he was due. Accordingly, the court dismisses Goodman's due process claim.[6]

## VI.

Goodman claims that the Board's reliance on twelve of the fourteen parole-consideration factors violates the Virginia Constitution's guarantee of due process and prohibition on ex post facto laws. He likewise claims that the deferral-of-parole-consideration provision in § 53.1-154 is an ex post facto violation under the Virginia Constitution. Given the court's resolution of the federal questions in this case, the court declines to exercise supplemental jurisdiction over Goodman's state law claims. See 28 U.S.C. § 1367(c)(3).[7]

## VII.

For the reasons stated, the court dismisses Goodman's complaint.

**ENTER:** February 21, 2013.

_____
UNITED STATES DISTRICT JUDGE

---

[6] Goodman has also filed motions for a temporary restraining order and a preliminary injunction. Having disposed of the underlying cause of action, the court denies the motions. See, e.g., Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997) (noting the requirement that to obtain preliminary injunctive relief a plaintiff must show a likelihood of success on the merits).

[7] Even if the court exercised jurisdiction over Goodman's state law claims, its conclusions on those issues would likely be identical to its conclusions on the federal claims. See, e.g., Shivaee v. Commonwealth, 270 Va. 112, 119 (2005) ("Because the due process protections afforded under the Constitution of Virginia are co-extensive with those of the federal constitution, the same analysis will apply to both."); Carpenter v. Commonwealth, 51 Va. App. 84, 91 (Va. Ct. App. 2007) (analyzing the ex post facto clauses of the United States and Virginia Constitutions identically).

Case 7:12-cv-00568-SGW-RSB   Document 17   Filed 02/21/13   Page 9 of 9   Pageid#: 285